**Julie L. BREHMER, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

**No. 01–3174.**

United States Court of Appeals, Federal Circuit.

June 25, 2002.

William W. Osborne, Jr., Osborne Law Offices, P.C., of Washington, DC, argued for petitioner. With him on the brief was Michael Doherty, Deputy General Counsel, National Air Traffic Controllers Association, AFL–CIO, of Washington, DC.

Heide L. Herrmann, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick,

Assistant Director. Of counsel was Peter J. Hannums, Attorney, Federal Aviation Administration, Office of the Chief Counsel, of Washington, DC.

Before BRYSON, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The Federal Aviation Administration ("Administration") removed an air traffic controller, the petitioner, Julie L. Brehmer ("Brehmer"), when for the third time within eighteen months she failed to maintain the minimum spatial separation between aircraft that she was tracking. The arbitrator who heard the grievance proceeding through which Brehmer challenged her removal upheld the Administration's action. We affirm.

## I

Brehmer began working as a certified air traffic controller in Denver in September 1997. She was responsible for "the safe, orderly, and efficient flow of air traffic" within the airspace assigned to her, which is accomplished primarily by assuring that aircraft maintain the minimum specified vertical and horizontal separation.

On December 19, 1998, Brehmer failed to maintain the minimum separation between two commercial airplanes under her primary control. Following this incident, she underwent skill enhancement training, including an "in-depth discussion of the events leading up to and surrounding the incident," a review of pertinent Administration orders, and lessons and skill checks.

Ten months later, on October 24, 1999, Brehmer again failed to maintain the necessary separation between two aircraft, this time between a private flight and a commercial one. She was decertified as an air traffic controller and underwent reme-dial training, which was much more extensive than the enhancement training she received following the 1998 incident. She was then recertified and returned to duty.

The third incident, only six months after the second one, led to her removal. On April 11, 2000, a U.S. Airways flight traveling east from San Francisco to Pittsburgh entered the airspace for which Brehmer was responsible flying at 39,000 feet, an altitude typically reserved for westbound traffic. Different altitudes normally are assigned to planes traveling west to east and east to west, although deviations because of traffic or weather conditions are not infrequent. The Administration uses the acronym "WAFDOF" for an aircraft that is moving at the "wrong altitude for direction of flight," and certain additional safety measures are mandated for aircraft traveling with WAFDOF status.

As an aircraft leaves the airspace of one controller and enters that of another, the two controllers communicate vital information about the aircraft via "flight strips"— small rectangular pieces of paper containing shorthand indicating the plane's speed, altitude, course, holding instructions, comments by the pilot, and any other relevant information. This is referred to as "handing off" the aircraft—transferring primary responsibility to another controller. The controllers also confirm the same information with the pilot via radio. While the aircraft is within a particular controller's airspace, he or she will make additional notations indicating any changes to that information, in preparation for handing off the flight to yet another controller.

In the instant case, the controller who had handed off to Brehmer responsibility for the U.S. Airways flight gave her a flight strip that, in addition to containing flight data, also included a red "W" indicating the aircraft's WAFDOF status and had the flight's altitude underlined in red.

The flight strip Brehmer prepared, however, contained no such markings to indicate its continued WAFDOF status as it proceeded through her airspace.

About twenty minutes later, a Northwest plane, traveling west from New York to San Francisco at the same altitude as the U.S. Airways eastbound flight but on the reverse course, also entered Brehmer's area. Brehmer acknowledged that flight's position and course by radio but apparently failed to notice that the two aircraft were on a head-on collision course and took no action to correct the situation. Six minutes later, the pilot of the Northwest flight asked the Denver Control Center by radio about the aircraft headed directly towards him. Before Denver responded, the computerized collision avoidance system on the two planes alerted both pilots to the situation, and each pilot took evasive action. Brehmer reported to her supervisor what had happened, and was removed from her post pending an Administration investigation.

The Administration removed Brehmer for "[n]egligent or careless work performance resulting in recurring failure to maintain separation standards, thereby jeopardizing the safety of the flying public." It told her: "[y]ou failed to detect the traffic conflict and you failed to scan or mark the flight progress strips to maintain correct status of the traffic. You failed to note and coordinate relevant information to the traffic situation when accepting a handoff of conflicting traffic at the same altitude. Were it not for the TCAS alert in each aircraft, a tragic accident could have resulted with the loss of hundreds of lives and millions of dollars in property damage."

Brehmer challenged her removal with the assistance of union representation by filing a grievance pursuant to the grievance procedures of the collective bargaining agreement. *See* 5 U.S.C. § 7121(d)

(2000) (providing that an employee "may raise the matter under a statutory procedure or the negotiated procedure, but not both"). After an evidentiary hearing, the arbitrator rejected Brehmer's contentions and upheld her removal. In a fifty-two page opinion the arbitrator ruled that: "the Agency has established by a preponderance of the evidence and to the satisfaction of the Arbitrator, that it had sufficient cause to initiate disciplinary action against Ms. Brehmer. The disciplinary action was based on Ms. Brehmer's inattention in performing the duties of a controller, which had not been remedied through the Agency's efforts of retraining." He stated that although "Ms. Brehmer has shown that under direct supervision she can perform all the responsibilities of an air traffic controller and perform them well, ... controllers ... are required and expected to work without direct supervision. Ms. Brehmer, when unsupervised, for whatever reason, has evidenced an inability to concentrate on what is in front of her and this inattention has resulted in three operational errors."

The arbitrator held that the Administration had not erred in considering Brehmer's two prior incidents. "[B]ased on the gravity of the April 11 incident; the prior controller caused operational errors; the fact that these errors occurred within a relatively short period of time and that the remedial training provided by the Agency did not result in a correction of the underlying problem," the arbitrator concluded that the record "does not support a finding that the Agency abused it's [sic] discretion in removing Ms. Brehmer."

In this appeal, Brehmer does not challenge the factual basis for the arbitrator's findings. She contends only that the Administration erred (1) in taking disciplinary action against her instead of providing her with additional training to remedy her

performance deficiencies and (2) in considering her two prior similar incidents. In reviewing the arbitrator's decision, we apply the same standards we use in reviewing a decision of the Merit Systems Protection Board. 5 U.S.C. § 7121(f) (2000); *see Cornelius v. Nutt,* 472 U.S. 648, 656, 662 n. 16, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985); *Dixon v. Dep't of Transp.,* 8 F.3d 798, 804 (Fed.Cir.1993); *Girani v. Fed. Aviation Agency,* 924 F.2d 237, 240 n. 6 (Fed.Cir.1991). Under those standards, we affirm the arbitrator's decision.

## II

■■■ A. Brehmer contends that in initiating the removal proceedings, the Administration violated its settled policy of dealing with controllers' operational errors by corrective retraining rather than disciplinary action. A "policy" is just that, however. It indicates the standards an agency generally will follow in conducting its operations. It is not, however, a black letter rule that the agency is required to follow in all cases without regard to the circumstances of the particular situation before it.

Here, the Administration had followed that policy in dealing with Brehmer's two prior failures to maintain separation between the aircraft assigned to her. That general policy, however, did not require the Administration again to give her additional training when she did the same thing a third time—this time creating the possibility, if not the likelihood, of a head-on air crash involving great loss of life and significant property damage. Nothing in this policy required the Administration to give Brehmer the opportunity for still more additional training, in the hope of correcting what appeared to be her uncorrectable defect of failing to pay proper attention to the situations of the aircraft she was handling.

■■ · B. Brehmer contends that the collective bargaining agreement itself obligated the Administration to give her additional training for her third lapse in performance. She relies upon Article 10, Section 2 of that agreement, which states that "[w]hen the Employer decides that corrective action is necessary, consideration should be given to the application of measures which, while not disciplinary, will instruct the offending employee and/or remedy the problem."

The Administration complied with this provision. It "considered" the possibility of additional training, but concluded that, in light of the failure of the prior retraining to improve Brehmer's performance, additional retraining would be ineffective. The statement in the collective bargaining agreement that "consideration should be given" to non-disciplinary measures did not require the Administration to eschew discipline in every situation. *Cf. Sec'y of Agric. v. Cent. Roig Ref. Co.,* 338 U.S. 604, 611–14, 70 S.Ct. 403, 94 L.Ed. 381 (1950).

*Central Roig* involved a statute requiring the Secretary of Agriculture, in allocating sugar quotas, to "tak[e] into consideration" three factors. In making the allocation and after considering all three factors, the Secretary "concluded that one of them 'could not fairly be applied' and 'g[a]ve no weight to this factor.'" 338 U.S. at 609, 70 S.Ct. 403. The Court upheld the Secretary's action as complying with the statute, stating: "The Secretary may conclude, after due consideration, that in the particular situation before him it is not essential that each of the three factors be quantitatively reflected in the final allotment formula." *Id.* at 613, 70 S.Ct. 403; *see also Hannon v. Dep't of Justice,* 234 F.3d 674, 681 (Fed.Cir.2000) ("Since the Board considered the relevant factors, it is not [the court's] function to substitute [its] judg-

ment for that of the agency regarding the weight to be given them. That is a task for the Board, not the reviewing court."). Similarly, the Administration here properly concluded, "after due consideration," that in view of the pattern of Brehmer's conduct, further retraining was unwarranted.

The removal also is consistent with the Administration's table of penalties in its statement on conduct and discipline, which the collective bargaining agreement states "should be used, when applicable, as a guide to determine an appropriate penalty." For a first offense of "[n]egligent or careless work performance that results in injury or danger of injury to either the individual involved or to others," the penalty ranges from a ten day suspension to removal. For a second offense there is no range; removal is specified. Thus, the table of penalties, which provides "a guide to determine an appropriate penalty," recognizes that removal could be appropriate for a first offense of the type Brehmer committed.

### III

Brehmer further contends that the Administration improperly considered her two prior incidents in determining ‧ that removal was the appropriate action in this case. She argues (A) that under the collective bargaining agreement the Administration was barred from considering events that occurred more than one year before it initiated action and (B) that by relying upon those two earlier incidents, the Administration converted what had been merely corrective actions into disciplinary ones.

■ A. Brehmer points to Section 6(a) of Article 10 of the agreement, which applies "to cases of reduction in grade or pay, or removal for unacceptable performance." That section states that a decision "to sustain [a] removal or downgrade

... may only be based on those instances of unacceptable performance which ₊ occurred within one (1) year prior to the date of the written notice [of proposed action]."

Brehmer's removal complied with that provision. The notice of proposed removal, dated June 16, 2000, was issued well within one year of both the April 11, 2000 incident that was the gravamen of the charge against her and the October 1999 incident in which she failed to maintain proper separation between two planes. Although the notice was filed more than a year after her first instance of unacceptable performance, we do not read the collective bargaining agreement as barring the consideration of everything that occurred more than one year before the notice in determining what remedial action would be appropriate for the employee's misconduct.

The language in the agreement—"based on" instances of unacceptable performance that occurred within one year—indicates that the one-year period relates to the unacceptable performance upon which the disciplinary action is based. It is a limitations period designed to preclude the Administration from basing disciplinary action upon what the parties considered stale instances of employee unacceptable performance, namely, those that occurred more than a year previously. If the parties had intended to bar the Administration from even considering events that occurred more than a year earlier in determining an appropriate penalty, they easily could have so stated. Instead, they more narrowly framed the prohibition to reach only conduct that the proposed action was "based on."

The collective bargaining agreement itself provided that, in using the table to select an appropriate penalty, the Administration should consider "the length of time that has elapsed from the date of any previous offense. As a general guide, a

two (2) year time frame should be used in determining freshness." Thus, the agreement recognized that two years is an appropriate frame of reference for determining the penalty. Brehmer's first incident occurred well within two years of the notice. The Administration did not abuse its discretion in considering that incident in concluding that removal was the appropriate penalty in this case. This is so even though the first incident was listed in the notice of proposed removal as one of the three specifications describing her alleged "[n]egligent or careless work performance ... jeopardizing the safety of the flying public."

B. Brehmer argues that by relying upon her two prior incidents in determining the penalty for her third incident, the Administration changed its treatment of those earlier incidents from performance to disciplinary events. The Administration initially treated those prior events as involving solely Brehmer's performance, which it sought to improve by twice retraining her. It did not convert those prior instances of performance error into disciplinary matters when it considered them in determining the appropriate penalty for Brehmer's third incident, which it properly treated as a disciplinary matter.

### CONCLUSION

The arbitrator's decision upholding Brehmer's removal is

*AFFIRMED.*