Joseph V. MAZARES, Jr., Petitioner,

v.

DEPARTMENT OF THE
NAVY, Respondent.

Michael R. Testman, Petitioner,

v.

Department of the Navy, Respondent.

Nos. 01–3337, 01–3338.

United States Court of Appeals,
Federal Circuit.

Sept. 11, 2002.

Sam S. Sheldon, Cozen O'Connor, of San Diego, CA, argued for petitioners.

Steven J. Abelson, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Charna J. Swedarsky, Associate Counsel for Litigation, Office of Counsel, Military Sealift Command, Department of the Navy, of Washington, DC. Of counsel was Sandra Patterson–Jackson, Office of Counsel, Military Sealift Command, Department of the Navy, of Virginia Beach, VA.

Before RADER, Circuit Judge,
FRIEDMAN, Senior Circuit Judge, and
GAJARSA, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The Department of the Navy removed two civilian seamen it employed aboard a naval ship because they disobeyed an order to be vaccinated against anthrax. The Merit Systems Protection Board ("Board") upheld both removals. So do we.

I

A. The facts found by the Board's administrative judge are not disputed.

The petitioners Mazares and Testman were employed by the Military Sealift

Command aboard the naval ship Kilauea. The crew was approximately eighty percent civilian mariners (known in Navy lexicon as CIVMARs) and twenty percent military personnel. The Kilauea carried ammunition, which it supplied to an aircraft carrier operating in the western Pacific Ocean.

The Kilauea was headed for a port in Korea, where it was scheduled to undergo a major overhaul. Because Korea was considered a high-risk area for biological weapons, the Commander of the Military Sealift Command ordered that all members of the crew, civilian and military, be vaccinated against anthrax.

The chief mate, who was the immediate supervisor of Mazares and Testman, ordered them to report to the Medical Services Officer to be vaccinated. He told them that if they had "questions" they should ask the Medical Officer. They refused to take the vaccination.

The next day they and the chief mate met with the captain. He stated that he was just carrying out his instructions in requiring the vaccination, and warned them that if they failed to take the vaccine, they would be charged with "violating an order." He stated they would meet again in one week.

During the next week the chief mate repeatedly urged them to take the vaccine, but they continued to refuse. At the end of the week, when they still refused, he told them he had "orders" from the captain to "sign [them] off the ship."

B.  They were both then transferred from the ship and repatriated to California. The Navy then instituted removal proceedings against them.

In response to the notices of proposed removal, each of them admitted he had received the vaccination order and disobeyed it, but offered justifications for his conduct that, he asserted, entitled him to a medical waiver. (The Navy permits vaccination requirements to be waived for medical reasons.) Mazares stated that he suffered from asbestosis and had been exposed to Agent Orange during his military service in Vietnam. Testman stated that he previously had received the first two doses of the series required for anthrax vaccination, and that each time he had suffered headaches and body pains (he continued to work nevertheless).

The Navy cancelled the proposed removals and investigated Mazares's and Testman's claims. It concluded, however, that neither of them was entitled to a medical waiver of the vaccination requirement and, after full administrative proceedings, removed both of them "for failure to obey a direct order to receive mandatory injections of an anthrax immunization vaccine."

Mazares and Testman each appealed his removal to the Board. The same administrative judge heard both cases. In his initial decisions, which became final when the Board refused to review them, the administrative judge upheld the removals.

In detailed opinions, he held that the Navy had proved by preponderant evidence its charges that Mazares and Testman "willfully and intentionally refused the order of a superior officer." He rejected their contention that the order was unauthorized, finding that the Navy "had full authority to order the appellant[s] to submit to anthrax vaccination, and immediate vaccination became a requirement of the appellant's CIVMAR position when KILAUEA was ordered to land in Korea, which had been designated a high-threat area." He noted that their "subjective fear of vaccination was not sufficient to

excuse [their] failure to obey a direct order." The administrative judge "conclude[d] that the vaccination orders were lawful, and the agency had a right to have them obeyed."

Finally, the administrative judge upheld the penalty of removal. He concluded that the officer who selected the penalty "considered the relevant factors and exercised his discretion within tolerable limits of reasonableness. Under the circumstances, I cannot find that his choice of penalty was so excessive as to be an abuse of discretion, or that it exceeds the maximum reasonable penalty under the circumstances." (citations omitted).

## II

Mazares and Testman here challenge their removals on two grounds. They contend (A) that the order to receive the anthrax vaccine was unauthorized and therefore they could not be punished for disobeying it, and (B) that the penalty of removal was excessive.

■ A. Their challenge to the validity of the orders rests primarily upon a one-page March 30, 1999, memorandum from the Assistant Secretary of Defense to the Secretaries of the Army, Navy, and Air Force. The subject of the memorandum was "Change to Anthrax Vaccine Immunization Program (AVIP) Operation Procedure (One Day Policy) Schedule." They rely upon the first paragraph of the memorandum, which stated:

Effective immediately, the AVIP will be applied to all U.S. military personnel and Department of Defense (DoD) emergency essential civilian employees and contractor personnel assigned, deployed or on temporary duty in the high threat areas and contiguous waters of South-west Asia (Kuwait, Saudi Arabia, Bahrain, Jordan, Qatar, Oman, UAE, Yemen, and Israel) and the Korean Peninsula for any period of time. Prior to entry into the designated high threat areas these personnel must initiate vaccination against anthrax in accordance with the prescribed Immunization schedule. Ideally, personnel should receive at least the first three vaccinations in the series. In those rare circumstances when an Individual is not able to take or continue with the anthrax vaccination for medical or administrative reasons, they will be evaluated for deployability in accordance with Service criteria. Neither this policy nor the requirement to participate in AVIP is applicable to civilian employees or contractor personnel who are not designated as emergency essential.

Since it is conceded that Mazares and Testman have not been designated as "emergency essential" employees, they contend that the captain of the Kilauea had no authority to order them to receive the anthrax vaccine. They particularly stress the last section of the first paragraph, which states that "[n]either this policy nor the requirement to participate in AVIP is applicable to civilian employees or contractor personnel who are not designated as emergency essential."

As this court recently stated, although in a different context, "[a] 'policy' is just that, however. It indicates the standards an agency generally will follow in conducting its operations. It is not, however, a black letter rule that the agency is required to follow in all cases without regard to the circumstances of the particular situation before it." *Brehmer v. Fed. Aviation Admin.,* 294 F.3d 1344, 1348 (Fed.Cir.2002).

Those words are equally applicable to the present case.

The memorandum states the general policy the services are to follow in administering the anthrax vaccine to military and civilian personnel and the policy is inapplicable to non-"emergency essential" civilian employees. It does not, however, either explicitly or by necessary implication, prohibit anthrax vaccination of such civilian employees, i.e., those who are not designated "emergency essential." It states only that the Department's general policy providing for anthrax vaccination does not cover those employees.

There is ample authority in the appropriate Navy regulations and directives for the Navy to require all civilian employees, including those not designated "emergency essential," to receive the anthrax vaccine when the Navy determines that such action is necessary and appropriate to protect the health of such employees. In a written policy that antedated the March 30, 1999, memorandum upon which Mazares and Testman rely, the Department of Defense provided for the immunization of personnel expected to enter certain "high-threat areas"—referring to areas "in the proximity of a nation or nations considered to pose a potential biological threat to DoD personnel by the Chairman of the Joint Chiefs of Staff in consultation with the Commanders of the Unified Commands and the Director, DIA." DoD Directive 6205.3, "DoD Immunization Program for Biological Warfare Defense" (Nov. 26, 1993). The Secretary of the Navy then issued an instruction that authorized immunization against biological threats for all "alert forces," including civilian mariners. The Department of the Navy also issued an instruction specifically relating to anthrax, which authorized mandatory vaccination for "Federal civilian employees and other groups having status equivalent to deployable forces serving under the auspices of the [Department of the Navy].... [I]n certain instances, anthrax immunization might be determined by the appropriate authority to be a condition of [civilian] employment."

Finally, the Commander of the Military Sealift Command issued an order dated October 14, 1999, that stated that "[t]he basic immunization series for deployable Naval Forces, including anthrax, is a requirement for all MSC CIVMARs unless medically waived." This order directed also that immunization was to begin immediately for those personnel "subject to deployment into high threat areas for any length of time." It was pursuant to this order, a copy of which was sent to the Kilauea, that the captain of that vessel ordered Mazares and Testman to be given the anthrax vaccination.

The military has broad authority and discretion in dealing with its personnel, both military and civilian, including the protection of their health. The Navy did not exceed its authority or otherwise abuse its discretion by ordering Mazares and Testman to undergo anthrax vaccination.

■ B. The penalty of removal was neither unauthorized nor excessive. The misconduct for which Mazares and Testman were removed was "failure to obey a direct order to receive mandatory injections of an anthrax immunization vaccine." That misconduct constituted insubordination, which this court defines as a "willful and intentional refusal to obey an authorized order of a superior officer which the officer is entitled to have obeyed." *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed.Cir.2002).

Insubordination is a serious offense that disrupts the work place and interferes with and threatens the ability of the work force to perform its duties. Its adverse impact is particularly serious in the military, where prompt obedience to lawful orders is essential, especially aboard a ship. In this case, there was a clear and unjustified refusal to obey the lawful order of a superior. There can be no question that the removal of Mazares and Testman was "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513 (2000).

"Our statutory scope of review [of penalties] is narrow. Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency." *Connolly v. Dep't of Justice*, 766 F.2d 507, 514 (Fed.Cir.1985) (citing *Miguel v. Dep't of the Army*, 727 F.2d 1081, 1083 (Fed.Cir.1984)). *See also Brown v. Dep't of the Navy*, 229 F.3d 1356 (Fed.Cir.2000). Unless the penalty is totally unwarranted or grossly disproportionate to the misconduct, we will not overturn it. *See Mings v. Dep't of Justice*, 813 F.2d 384, 390 (Fed.Cir.1987); *Miguel v. Dep't of the Army*, 727 F.2d 1081, 1083 (Fed.Cir.1984).

Here, as the Board noted, the agency considered all the relevant factors set forth in *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280 (1981), in deciding to remove Mazares and Testman. The agency "considered" the employees' fifteen and eleven years, respectively, of "honorable and dedicated service," their prior "naval status" and their "excellent evaluations." The deciding officer stated that although each of them had been an "outstanding" civilian mariner, he found that "there is no basis for your failure to receive mandatory injections of the anthrax immunization vaccine." He also explained: "I have lost confidence in your ability to perform at a satisfactory level due to your refusal to take the anthrax vaccine. Also, the nature of the offense causes me to question your reliability and weakens my confidence in your ability to carry out your duties ... during future missions where this vaccine is required."

The Board correctly determined that the agency-imposed penalty of removal did not "exceed[ ] the maximum reasonable penalty under the circumstances."

### CONCLUSION

The decision of the Board is *AFFIRMED*.