Rafael NATER, Petitioner,

v.

DEPARTMENT OF EDUCATION, Respondent.

No. 00–1589.

United States Court of Appeals, Federal Circuit.

Jan. 16, 2003.

Before CLEVENGER, GAJARSA, and PROST, Circuit Judges.

PER CURIAM.

Rafael Nater appeals the decision of the Merit Systems Protection Board ("Board"), affirming the decision of the Department of Education ("Agency") to remove him from employment. *Nater v. Dep't of Educ.*, Docket No. NY–0752–98–0297–I–1 (Mar. 18, 1999). Because the Board's decision is supported by substantial evidence, we *affirm*.

## BACKGROUND

Nater worked for the agency as an auditor in the Office of Inspector General in San Juan, Puerto Rico beginning in 1987. Between 1990 and 1994, Nater allegedly reported on a number of office matters, including issues of tardiness, abuse of official time, misuse of government equipment, and misuse of government credit and identification cards. In 1994, he filed a formal complaint of discrimination with the Agency's Equal Employment Opportunity ("EEO") Office.[1]

In June 1994, Nater was admonished for failing to follow instructions and refusing to complete assignments. Similar deficiencies were noted in September 1994, January 1995, February 1995, January 1996 and April 1996. The Agency suspended him for five days in October 1996 for the April 1996 incident, in which the Agency characterized Nater as exhibiting "inappropriate, disrespectful behavior." In December 1996, Nater was ordered to review some audit work he had previously completed to confirm compliance with government accounting standards. He refused three times to comply with the specific order. In March 1997, Nater failed to respond to a supervisor's request regarding her review of his working papers. Moreover, in July 1997, Nater refused to work as a member of an audit team. Finally, in October 1997, Nater became irate

1. The EEO Group later dismissed Nater's complaint because it received notice that he had filed a complaint in the U.S. District Court for the district of Puerto Rico stating the same allegations contained in the complaint before the EEO Group.

with a supervisor, yelling and screaming at her over the telephone to such an extent that a person overhearing the conversation felt it necessary to call the supervisor to be certain that she was not harmed by Nater's outbursts. These cumulative actions by Nater caused the Agency to institute a removal action.

On November 17, 1997, the Agency notified Nater of its proposal to remove him from federal service because of insubordination and unprofessional conduct. On February 25, 1998, the Agency issued a decision removing Nater from the federal service, effective the next day.

Subsequent to receiving his February 1998 notice of removal, Nater appealed to the Board on March 27, 1998, challenging his removal due to insubordination and unprofessional conduct. Nater also asserted the affirmative defenses of whistleblowing retaliation and national origin discrimination. On March 18, 1999, the AJ affirmed the removal decision, finding that the Agency proved by a preponderance of the evidence Nater's insubordination on three separate occasions between December 1996 and July 1997 and his unprofessional conduct in October 1997. The AJ further found that the Agency had demonstrated a nexus between the sustained charges and the efficiency of service and had established the reasonableness of Nater's removal. As to Nater's affirmative defenses, the AJ found that Nater proved that his disclosures concerning abuse of official time, misuse of government equipment, misuse of a credit card and misuse of an identification card were protected whistleblowing disclosures. However, the AJ found that Nater failed to prove by a preponderance of the evidence that his whistleblowing was a contributing factor in his removal. The AJ additionally found that the Agency proved by clear and convincing evidence that it would have re-

moved Nater absent his protected whistleblowing activities. Because Nater did not file a petition for review with the Board, the AJ's determinations became the final decision of the Board on April 22, 1999.

Nater then appealed the removal decision and the reprisal and discrimination claims to this court. We transferred the case to the United States District Court for the District of Puerto Rico pursuant to 5 U.S.C. § 7703(b) and 42 U.S.C. § 2000e–5, which provide that discrimination cases must be appealed to the appropriate United States District Court. The district court dismissed Nater's discrimination claim, finding that Nater's removal was not the result of national origin discrimination and that Nater failed to show that the Agency had not removed him because of insubordination and unprofessional conduct. *Nater v. Riley*, 114 F.Supp.2d 17, 27–29 (D.P.R.2000). The United States Court of Appeals for the First Circuit affirmed. *Nater v. Riley*, 15 Fed.Appx. 11, 12 (1st Cir.2001). The district court subsequently transferred the removal and reprisal claims back to this court. We now exercise jurisdiction over those outstanding claims pursuant to 5 U.S.C. § 7703(b)(1) (2000).

## DISCUSSION

We must affirm a Board decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; obtained without procedure required by the law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000). Substantial evidence is that which a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion. *Giove v. Dep't of Transp.*, 230 F.3d 1333, 1338 (Fed.Cir. 2000) (*citing* 5 C.F.R. § 1201.56(c)(1) (1999)). Substantial evidence requires a

lesser quantum of proof than preponderance of the evidence. *Id.* Findings of fact that rest in substantial part on credibility determinations are virtually unreviewable on appeal. *Bieber v. Dep't of Army,* 287 F.3d 1358, 1364 (Fed.Cir.2002). Our function as an appellate court does not entail re-weighing conflicting evidence or re-evaluating credibility determinations. *Id.*

## I. THE AGENCY'S REMOVAL DECISION

In affirming the Agency's removal decision, the AJ first determined that the Agency proved by a preponderance of the evidence that it removed Nater because he was insubordinate the three alleged occasions between December 1996 and July 1997, and because he acted unprofessionally in October 1997. Second, the AJ determined that the Agency demonstrated a nexus between the removal and the efficiency of service. *See* 5 U.S.C. 7513(a) (2000). The AJ finally determined that Nater's removal was reasonable under the circumstances. *See Douglas v. Veterans Admin.,* 5 MSPB 313, 5 M.S.P.R. 280, 302 (1981). We discern no legal error in the AJ's analysis. Therefore, we review only to determine whether the AJ's conclusion, that the Agency properly removed Nater, was supported by substantial evidence.

## A. INSUBORDINATION AND UNPROFESSIONAL CONDUCT

Nater challenges the AJ's factual findings of insubordination and unprofessional conduct. This court defines insubordination as a "willful and intentional refusal to obey an authorized order of a superior officer which the officer is entitled to have obeyed." *Mazares v. Dep't of Navy,* 302 F.3d 1382, 1386 (Fed.Cir.2002).

Nater does not challenge the substantiality of the evidence on which the AJ based his factual conclusions. Rather, he poses an alternative version of the facts and challenges the AJ's evaluation of witness testimony. He alleges that his supervisors at the Agency created the situations that provoked him as part of an elaborate conspiracy to frame and consequently fire him. He also argues that the supervisors who gave him the orders with which he refused to comply were not his supervisors, and therefore were not entitled to give him directives.

■ We find the Board's conclusion that the Agency proved insubordination and unprofessional conduct to be supported by substantial evidence. We decline to re-evaluate the AJ's factual determinations regarding witness testimony. The AJ heard testimony from multiple witnesses detailing how Nater repeatedly refused to obey orders, refused to recognize his supervisors' authority, verbally lashed out at co-workers and supervisors, and attempted to precondition orders before completing them. The AJ also heard supervisors testify that they had to reassign the work that Nater refused to do in order to complete that work. The supervisors also testified that they attempted to work with Nater in order to create an environment in which he would be a cooperative employee. Based upon this testimony, the AJ determined that Nater's actions amounted to intentional and willful disobedience, and thus, insubordination. The AJ further found that Nater was not excused from complying with his supervisors' orders.

Nater also contends that the Board misapplied the law with regard to the incidents of insubordination and unprofessional conduct. However, we see no error in the Board's application of the law. Nater's contentions about the AJ's misapplication of the law merely constitute a second line of challenges to the AJ's factual findings. He states that because the AJ "misapprehended" the facts, he found Na-

ter's case to be analogous to the wrong case law. With these contentions, Nater not only raises factual issues, but also fails to point to any lack of sufficiency in the evidence supporting the Board's decision.

## B. NEXUS

The AJ found that the Agency demonstrated that Nater's removal was "for such cause as will promote the efficiency of the service," i.e. that there was a nexus between the removal of Nater and the efficiency of service, as required by 5 U.S.C. 7513(a). We can think of no reason to disturb this finding.

## C. REASONABLENESS

Nater argues that the penalty of removal from the service was unreasonable. We note at the outset that we give significant deference to the agency in these decisions, and that as such our scope of review is narrow. See Connolly v. Dep't of Justice, 766 F.2d 507, 514 (Fed.Cir.1985) ("Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency."); see also Mazares, 302 F.3d at 1384 ("Unless the penalty is totally unwarranted or grossly disproportionate to the misconduct, we will not overturn it.").

Nater's contentions regarding the inappropriateness of the penalty rest solely on his ongoing allegations of reprisal. He states that the Agency "considered factors which [sic] should not have" in releasing him because the Agency based its decision on "the protected disclosures, not the manufactured-false incidents of insubordination and misconduct." The Board noted that its review of an agency-imposed penalty was limited only to confirming whether the agency conscientiously considered all of the relevant *Douglas* factors and did not exceed its discretion beyond the bounds of reasonableness. As we note below, we

affirm the Board's conclusion that Nater does not present a viable whistleblowing defense. Because of this, and because the agency satisfactorily proved Nater's insubordination and unprofessional conduct, we will not disturb the Board's conclusion that the penalty of removal was reasonable.

## II. NATER'S REPRISAL CLAIM

In order to prove reprisal, an employee must show by a preponderance of the evidence that: (1) the disclosure made was protected; and (2) the disclosure was a contributing factor to the personnel action taken. *Horton v. Dep't of Navy*, 66 F.3d 279, 282–83 (Fed.Cir.1995). The Board may not disturb the Agency's decision, however, if the Agency demonstrates by clear and convincing evidence that it would have taken the same action against the whistleblower in the absence of his protected disclosure. 5 U.S.C. § 1221(e)(1)- (2) (2000); *see also Horton*, 66 F.3d at 284. The AJ concluded that (1) some of Nater's disclosures were protected, but that (2) Nater failed to prove that his whistleblowing was a contributing factor in his removal, and (3) the Agency demonstrated that it would have removed Nater absent his protected disclosures.

 Here, Nater challenges the latter two conclusions. To this end, Nater does not allege that the AJ's conclusions are based on insubstantial evidence. Instead, he resubmits the arguments made to the AJ. We decline to re-evaluate the AJ's detailed evidentiary determinations. Like the findings of insubordination, the AJ based his decision regarding the protected disclosures on witness testimony and on a thorough review of the record. The AJ heard testimony that the supervisors who were the subject of Nater's protected disclosures neither knew of the disclosures nor had a desire or motive to retaliate against him. The AJ also heard testimony

that the protected disclosures and his removal had a weak temporal relationship because the disclosures were made at least three years before the Agency proposed removing him. Furthermore, the AJ heard testimony that the Agency had a strong basis for removing Nater because of reasons not related to the disclosures, namely his misconduct. In sum, we conclude that substantial evidence underlies the Board's conclusions that Nater failed to prove that his whistleblowing was a contributing factor in his removal and that the Agency would have removed Nater absent the protected disclosures.

### CONCLUSION

We conclude that substantial evidence supports the Board's conclusions that the Agency proved Nater's insubordination, that Nater failed to prove his reprisal claim, and that removal was a reasonable penalty under the circumstances. We accordingly affirm.