**Mary HUTCHINSON, Petitioner,**

v.

**DEPARTMENT OF THE TREASURY,
Respondent.**

No. 04–3064.

United States Court of Appeals,
Federal Circuit.

DECIDED: July 12, 2004.

Thomas D. Dinackus, Principal Attorney, William F. Ryan, David M. Cohen, of Counsel, Department of Justice, Washington, DC, Jacqueline Jackson, of Counsel, San Francisco, CA, for Respondent.

David S. Bristol, Principal Attorney, Solana Beach, CA, for Petitioner.

Before GAJARSA, LINN, and PROST, Circuit Judges.

PER CURIAM.

Mary Hutchinson ("Hutchinson") petitions for review of the final order of the Merit Systems Protection Board ("Board") sustaining her removal from her position with the United States Customs Service ("Customs"). *Hutchinson v. Dep't of the Treasury*, No. SF–0752–01–0275–I–3, 2003 WL 22299308 (M.S.P.B. Sept. 30, 2003) (*"Final Order"*). We *affirm*.

## I.  BACKGROUND

Hutchinson began her employment as an inspector with Customs in January of 1992 in Calexico, California. Hutchinson's duties as an inspector included determining whether the people coming across the borders were eligible to enter the United States, assessing any necessary taxes on merchandise they might be carrying, and inspecting them and their vehicles for narcotics and other contraband. As part of her job, Hutchinson operated the Treasury Enforcement Communications System II ("TECS"), which is the computer system used by Customs to monitor and record border traffic. In addition to keeping track of border-crossing activity, TECS can also be used to flag vehicles suspected of illegal activity (called placing a "lookout" on a vehicle).

On October 26, 1994, Hutchinson was working as an inspector on primary lane 8 at the Calexico Port of Entry on the United States/Mexico border. During her shift, a white pickup truck occupied by Hutchinson's daughter and son-in-law crossed the border through her lane at approximately 4:30. Hutchinson admits that she did not enter the vehicle's license plate into the TECS system as required by agency procedures.

Apparently, the TECS system had a lookout on the white pickup truck. Other Customs officers present on the scene recognized the vehicle as being on lookout

from a previous encounter, and began to move toward the vehicle as it was stopped in Hutchinson's lane. One of the officers, Senior Inspector Beichler, gestured to Hutchinson inquisitively as to whether she needed assistance escorting the vehicle to a secondary inspection location. Hutchinson, however, waived the officers off and released the vehicle into the United States. Beichler later checked the vehicle's license plate number, which he had written on the palm of his hand immediately after the incident, in the records of the TECS system and found that it was still on active lookout. While in the TECS system, Beichler also noticed that Hutchinson had not entered the vehicle's license plate into the TECS system at the time of the border crossing. Beichler reported the incident to his Supervisor who, in turn, reported the incident to Internal Affairs. Internal Affairs initiated an investigation of Hutchinson on October 31, 1994.

In February of 1998, Customs placed Hutchinson on administrative pay leave. Until that point, she had remained on duty as a Customs Inspector at the lanes in Calexico. In October of 1998, Hutchinson was criminally indicted with three felony counts of making false statements and one misdemeanor count of disclosure of sensitive information. Hutchinson's trial resulted in a hung jury. In 1999, under a subsequent indictment on similar charges, a jury acquitted Hutchinson.

Following her acquittal, Customs initiated proceedings to remove Hutchinson from her position as a Customs Inspector. In its proposal to remove Hutchinson, Customs provided four charges: (1) failure to follow established inspectional procedures; (2) material and intentional falsification; (3) unauthorized disclosure of TECS II information; and (4) querying TECS data for other than official purposes. Customs upheld all four of the charges. Weighing

the aggravating and mitigating factors in Hutchinson's case, Customs concluded that removal was an appropriate sanction and would promote the efficiency of the service. Customs removed Hutchinson on February 5, 2001.

Hutchinson filed a petition with the Merit Systems Protection Board seeking review of Customs' decision. An Administrative Judge reviewed the case, and affirmed Customs' removal of Hutchinson. *Hutchinson v. Dep't of the Treasury*, No. SF–0752–01–0275–I–3, 2003 WL 22299308 (M.S.P.B. Sept. 11, 2002) (*"Initial Decision"*). The Administrative Judge addressed and sustained each of the four charges against Hutchinson, finding that the agency had proved each by a preponderance of the evidence. *Id.* at 3–12. The Administrative Judge also addressed and rejected Hutchinson's defenses including laches and her challenge to the reasonableness of the agency's chosen penalty, both of which determinations Hutchinson challenges on appeal. *Id.* at 17–22. Regarding her laches defense, the Administrative Judge found that Hutchinson had shown neither that Customs' delay was unreasonable nor that there was any resulting prejudice from the delay. As for her reasonableness challenge, the Administrative Judge found that the penalty of removal fell "well within the tolerable limits of reasonableness and that it [was] for such cause as promotes the efficiency of the service." *Id.* at 22. Having sustained each of the charges and rejected all of Hutchinson's defenses, the Administrative Judge affirmed Customs' removal of Hutchinson.

Hutchinson filed a petition for review by the Board of the Administrative Judge's initial decision. The Board denied Hutchinson's petition, causing the Administrative Judge's initial decision to become the final decision of the Board. *Final Order,* slip

op. at 1–2. Hutchinson timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

By statute, our review of a final decision from the Board is limited. A Board decision may not be set aside unless it is: (1) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000). Hutchinson makes three challenges to the Board's decision, which we address in turn.

■ First, Hutchinson argues that the Board erred in rejecting her laches defense. "A party claiming laches must establish both unreasonable delay in bringing a personnel action and resulting prejudice." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1327 (Fed.Cir.1999). The Board found that Customs' delay in instituting this personnel action was not unreasonable due to the intervening criminal investigation of Hutchinson and her multiple trials. *Initial Decision*, slip op. at 17. The Board also addressed the shorter six-month delay between the incident in 1994 and when Hutchinson was first interviewed regarding the incident, and found that it too was not an unreasonable period of time for the agency to spend investigating Hutchinson's case. *Id.* Furthermore, the Administrative Judge explained, Hutchinson presented no evidence of how she was prejudiced due to the delay.

Without addressing the reasonableness of the delay, we must affirm the decision of the Board on this point. Much as the Board found during the proceedings before it, Hutchinson has not explained how she was prejudiced by the delay in her case. Hutchinson identifies both the destruction of evidence and failing memories as causing her to be "severely prejudiced" in her defense. Pet. Br. at 15. Hutchinson herself, however, appears to clearly recall the events of October 26, 1994, and the statements of the other officers present on October 26 at the lanes in Calexico are documented in affidavits that were before the Board. Hutchinson identifies no other party whose failing memory has harmed her case in defense. As for the destruction of evidence, even if the specific keyboard in use on the date in question may not have been available, the records of the terminal use and the testimony of TECS Coordinator charged with maintaining the systems at Calexico were, and both were before the Board during the proceedings.[1] *Initial Decision*, slip op. at 4–5.

According to the Board, the records of Hutchinson's terminal from the date in question show a "consistent and regular input of license plates into the system." *Id.* at 4. The system shows no disconnection of her terminal from the system, as the Custodian of Records for the TECS system, Ellen Mulvenna, explained sometimes occurred with the TECS terminals. *Id.* Hutchinson herself made no mention of the malfunctioning computer until she was interviewed six months later by Internal Affairs. In fact, there were no trouble reports at all filed for that particular TECS terminal between October 1, 1993, and December 31, 1994. The evidence

---

1. The TECS coordinator testified that, consistent with Hutchinson's account of what happened, sometimes the keyboards would not register on the screen. (J.A. at 53). Thus, despite the absence of the actual keyboard Hutchinson was using on October 26, the Administrative Judge heard testimony that the kind of problems described by Hutchinson do occur.

available shows that Hutchinson's terminal was functional on October 26, as well as throughout the period surrounding that date. Other than the missing keyboard, the importance of which we are skeptical in light of the other evidence presented, Hutchinson has failed to identify any evidence that was compromised by the delayed proceedings. Accordingly, the decision of the Board on this point is affirmed.

■ Hutchinson next challenges the Board's conclusion that removal was an appropriate penalty for her misconduct. Hutchinson argues that removal in this instance is a "grossly disproportionate" punishment, resulting in an abuse of discretion. Pet. Br. at 17. Removal, Hutchinson suggests, is appropriate for situations involving physical violence, but not on facts comparable to those present in her case. Hutchinson also argues that a variety of mitigating factors, including her reasonable explanation, her exceptional employment history, her continued service with Customs working the lanes at Calexico counsel in favor of a lesser punishment.

This court has explained that the "[d]etermination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency." *Hunt v. Dep't of Health & Human Servs.,* 758 F.2d 608, 611 (Fed.Cir.1985). As a result, the Board's review of an agency's choice of penalty is limited "to assur[ing] that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness." *Douglas v. Veterans Admin.,* 5 MSPB 280, 5 M.S.P.R. 313, 332–33 (1981). Here, the Board did exactly that.

The Board noted Hutchinson's full duration of employment with Customs, including her outstanding ratings and performance awards. *Initial Decision,* slip op. at 19. The Board, however, weighed these against the aggravating factors identified by Customs in its decision, listing the following:

> seriousness of the offenses; intent; repeated acts; misconduct was directly related to the duties of the Customs Inspector position and contradictory to the appellant's performance of her position; her misconduct negatively affected the mission of the agency; although it was a one time failure to input the license plate number, failure to do so could lead to a life and death type situation regarding a Customs Inspector's safety; providing false statements affects the appellant's credibility in testifying in court; and unauthorized queries and browsing was in direct violation of the agency prohibition to do so.

*Id.* In addition to the above reasons provided by Customs, the Board found Hutchinson's misconduct "even more egregious than the act alone would suggest" because of Hutchinson's admitted belief that her son-in-law was involved with illegal drugs and that his pickup truck was on a narcotics lookout. *Id.* at 22. In light of the high standards of ethical conduct expected of a Customs Inspector, the court found that Customs' chosen penalty was not beyond the bounds of reasonableness articulated in *Douglas. Id.*

Hutchinson's arguments challenge only the reasonableness of the penalty chosen by Customs and upheld by the Board. She does not challenge the facts underlying the charges, which form the basis for the agency's selection of penalty. Both Customs and the Board thoroughly reviewed her case and applied the relevant *Douglas* factors, including the mitigating circumstances that Hutchinson now argues on appeal should reduce her penalty. This court has explained that, "[u]nless the penalty is totally unwarranted or grossly disproportionate to the misconduct, we will

not overturn it." *Mazares v. Dep't of the Navy,* 302 F.3d 1382, 1386 (Fed.Cir.2002). The Board found that Hutchinson intentionally permitted her son-in-law, whom she suspected was involved with illegal drugs, to pass without secondary inspection into the United States from Mexico. The Board also found that Hutchinson warned her daughter that her husband's (Hutchinson's son-in-law's) truck was the subject of a Customs lookout. In light of the thoroughness of the Board's analysis and the severity of Hutchinson's misconduct, the Board did not err in upholding Customs' chosen penalty of removal.

 Hutchinson's final argument is that the Board erred in finding Rudy Camacho, the Director of Field Operations, to be a credible witness. In particular, Hutchinson argues that, in a previous case in which Camacho testified, the very same Administrative Judge found that Camacho's testimony lacked credibility. Hutchinson contrasts Camacho's testimony regarding the integrity required of Customs Inspectors and Customs' alleged loss of trust with Hutchinson with Customs' retention of Hutchinson on duty subsequent to the events of October 26 to show that Camacho's statements were inconsistent with the evidence of Customs' actions presented to the Board. Hutchinson also asserts that Camacho was biased against her as a result of a prior equal employment opportunity claim that she filed against him.

Hutchinson challenges Camacho's credibility generally, and identifies no specific issue presented or statement made during the proceeding before the Board that she believes requires reversal. Hutchinson's argument appears to be that, wherever the Board credited Camacho's testimony, we should find error. As we have often stated, the Board's credibility determinations are "virtually unreviewable" in this court

on appeal. *Hambsch v. Dep't of Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986). While Hutchinson cites a variety of reasons that Camacho's credibility might be undermined, the Board apparently found it was not so in this instance. Hutchinson has identified no reason that we should disagree with the Board's crediting of Camacho's testimony.

## III. CONCLUSION

Hutchinson has not demonstrated that the Board's decision is arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedure required by law, rule, or regulation having been followed; or unsupported by substantial evidence. Accordingly, the decision of the Board is affirmed.